CASE 84.—ACTION BY T. J. ASHER AGAINST CALVIN PACE.
—March 9, 1910.

# Pace v. Asher

Appeal from Harlan Circuit Court.

W. T. DAVIS, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Public Lands—Patents—Conflict.—Where ·two patents as laid out upon the ground conflict, the earlier patent controls.
2. Public Lands—Location of Patent—Evidence.—Evidence held insufficient to locate the elder of two conflicting patents in accordance with plaintiff's contention, but to require a finding that it should be located in accordance with defendant's contention, which would conform it to the general description contained in the patent as situated on certain creeks.

J. G. & J. S. FORESTER for appellant.

SAMPSON & SAMPSON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, T. J. Asher, by his petition in equity filed in the court below, alleged. his ownership by purchase from the Cumberland Valley Land Company of the poplar, ash, and cucumber timber of certain dimensions standing upon a tract of land particularly described in the petition, charged that the appellant, Calvin Pace, was without right claiming, cutting, and removing the timber in question, and asked an injunction restraining him from further

cutting or removing same. The land upon which
the timber stood is covered by a patent, purporting
to contain 120 acres, issued by the commonwealth of
Kentucky, December 30, 1885, to Carr Middleton,
who sold and conveyed the land to the Cumberland
Valley Land Company. Appellant by answer· denied
appellee's title to the timber in controversy, and al-
leged title thereto in himself, and to the land upon
which it stands, under a patent embracing a 200-acre
grant, issued by the commonwealth  November 17,
1844, to Wm. Thomas, who sold and conveyed the
land to his son, Joseph Thomas, by whom it was
sold and conveyed to appellant more than 40 years
ago.  By an amended answer appellant set  out a
specific boundary embracing that portion  of  the
Thomas 200-acre patent claimed to lap on the Mid-
dleton 120-acre·patent.

When appellee instituted the action he obtained
a temporary restraining order as prayed in the peti-
tion, by which appellant was prevented from further
cutting or removing the timber; but, after thus tying
appellant's hands, appellee himself continued the
work of cutting and removing it until appellant in-
stituted in the same court an action setting up his
alleged ownership of the land and timber, and ob-
tained therein a temporary restraining order  pre-
venting any further appropriation of the timber by
appellee. In the latter action appellee filed an an-
swer, denying appellant's title and alleging his own-
ership of the timber as charged in the petition of
the action previously brought by him. The actions
were consolidated and heard together, and a judg-
ment rendered declaring appellee the owner of the
timber and perpetually restraining appellant from
interfering with his right to cut and remove same.
From that judgment this appeal is prosecuted.

There is no controversy as to the proper location of the Middleton patent; but the location of the Thomas patent is in dispute. It is appellant's contention that the Thomas patent includes three-fourths of the land embraced in the Middleton patent, and 61 poplar, ash, and cucumber trees claimed by appellee. As the Thomas patent is the elder of the two patents, if its true location is as claimed by appellant, the judgment of the circuit court should have been in his favor. If, however, its true location is as claimed by appellee, the judgment was correct, and should not be disturbed.

The Thomas patent describes the land embraced therein as follows: "Lying and being in the county of Harlan, on Bill's and Turner's creeks, waters [tributaries] of Yocum creek, * * * beginning on a chestnut and two beeches in the edge of a flat; thence S. 26 degrees W., 30 poles, to a poplar; thence S., 46 poles, to a beech and hornbeam; thence S. 13 degrees W., 60 poles, to a beech and maple; thence S. 71 degrees E., 180 poles, to a white oak and black gum; thence N. 36 degrees E., 70 poles, to a beech and white oak; thence N., 200 poles, to a stake; thence S. 70 degrees W., 195 poles, to the beginning."

We find in the record three maps of the land in controversy, but because of its greater elaborateness of detail we hereby adopt, and make a part of the opinion, the map of G. A. Eversole:

Pace v. Asher.

[Colors have been disregarded, as numbers clearly indicate boundaries.]

Note:  Turner's and Yocum's creek are shown in green on map;
Bill's creek shown in blue.  The William Thomas 200-acre patent, as
located by Calvin Pace, is in red on map and numbered from figure 1,
the beginning, to 7, inclusive.  The Carr Middleton 100-acre patent is
in green on map, and numbered from beginning 8 to 15, inclusive. The
said Thomas patent, as located by T. J. Asher, is in blue on map, and
numbered from beginning 16 to 22, inclusive.

According to the above map the land covered by the Carr Middleton patent is shown in green, with the boundary in red lines, beginning at figure 8, thence with the figures 9, 10, 11, 12, 13, 14, and 15, and back to figure 8 containing by survey 100 acres, instead of 120 acres as stated in the patent. The Wm. Thomas 200-acre patent, as located according to appellant's contention, is shown on the map in pink, except where it laps on the Middleton patent, which is in green, with boundary indicated by red lines beginning at figure 1 in the Middleton survey, thence with the figures 2, 3, 4, 5, 6, 7, and back to figure 1.

The Wm. Thomas patent, as located according to appellee's contention, is shown on the map partly in pink, but mainly in green, with boundary indicated by black lines, beginning at figure 16, thence with the figures 17, 18, 19, 20, 21, 22, and back to figure 16. It is conceded that the timber in controversy is situated above the black line running from 22 to 16 as located on the map by appellee, and within the lap of the Thomas survey on the Middleton survey as the Thomas survey is shown on the map by appellant's contention. It is appellant's contention that the beginning corner of the Thomas patent is at figure 1 as indicated on the map, and that the chestnut and one of the two beeches called for in the patent as the beginning corner are yet standing at the edge of a flat about 30 yards from Bill's creek and 40 yards from the John King ford, that the stump of the other beech tree could until recent years be seen, and that the chestnut and beech contain marks corresponding in age with the date of the Thomas patent. Appellee contends, however, that the beginning corner of the Thomas patent is at figure 16 on the map, at the edge of a flat, 30 yards

from a house once occupied by David Middleton, and about 100 yards from Bill's creek, and that a beech, known as a corner tree, formerly standing at that point, was cut down by David Middleton.

Two witnesses, David Middleton and Louisa Howard, the latter a daughter of Wm. Thomas, were introduced by appellee to prove the beginning corner of the Thomas patent to be at figure 16 as shown on the map. Middleton testified that he cut down a beech at the place indicated by figure 16 for firewood, and after he had done so discovered it was a corner tree; that Polly Thomas, widow of Wm. Thomas, who was then at his house, told him the beech he had cut down was a corner of the Thomas land; that there was also a chestnut log lying on the ground near the beech, but he did not examine it to see whether it was marked. Middleton also testified that he saw a maple standing on the bank of Bill's creek, marked on two sides, and that Clay Thomas, a son of the patentee, Wm. Thomas, told him it was a corner tree of the Thomas patent. Louisa Howard's testimony was to the effect that she knew the beech cut down by David Middleton to be a corner of the Thomas patent, but was indefinite as to when and by whom she was told it was a corner tree, and finally said it was shown her by one of her parents as a corner tree the year of the surrender of Lee to Grant, and that she was then five years old. Her testimony in self-contradictory and in the main unsatisfactory. It is not apparent from the testimony of Middleton or Mrs. Howard that they were told the beech cut down by the former was the beginning corner of the Thomas patent. At most they were only told it was a corner tree of the Thomas patent, but what corner they did not say. Appellee also

introduced his agent, Creech, and four sur-
veyors. Creech and two of the surveyors,
Rice and Kirby, testified that the marks on the chest-
nut and beech, claimed by appellant to be the be-
ginning corner of the Thomas patent, are from 8
to 15 years of age. The other two surveyors, the
Johnsons, testified that the marks on the chestnut
and beech are from 10 to 20 years old. Appellee
offered no proof as to the location or identity of any
corner or object called for in the Thomas patent,
other than the place he claimed to be its beginning
corner.

The evidence introduced by appellant to establish
the beginning corner of the Thomas patent at the
chestnut and beech, figure 1 on the map, was more
satisfactory than was appellee's evidence as to the
location of the beginning corner. Appellant himself
testified that the chestnut and beech were pointed
out to him as the beginning corner of the Thomas
patent 12 or 15 years ago by Clay Thomas, now de-
ceased, a son of the patentee, and himself an elderly
man; that they were then marked as corner trees,
and the marks correspond in age with the date of
the patent; that he also knew the poplar, south of the
chestnut and beech, which is the second object called
for in the patent in the line running from the chest-
nut and two beeches, and that it was marked, and
the marks were apparently as old as the date of the
patent. He also testified that he formerly lived near
the fourth corner of the Thomas patent, designated
in the patent as a beech and maple, and knew these
trees, which were marked as corner trees, which
marks were as old in appearance as the date
of the patent; that the beech and maple are both
gone, but numerous maple sprouts are now growing

where they stood; and Creech, appellee's agent, ad-
mitted that, in surveying the line from the chest-
nut and beech claimed by appellant as the beginning
corner of the Thomas patent, the distance of the
fourth call gave out at these maple sprouts.   John
Hensley testified in appellant's behalf that Clay
Thomas, the son of the patentee, Wm. Thomas, in
his presence pointed out the chestnut and beech at
figure 1, and told him it was the beginning corner
of the Thomas patent, and that the chestnut and
beech were marked with three hacks which seemed to
be old marks.   Daniel Pace, 72 years of age, a broth-
er of appellant, testified that Polly Thomas, wife of
Wm. Thomas, informed him that the chestnut and
beech at figure 1 was the beginning corner of the
Thomas patent, and that he (witness) knows that
the marks now appearing on the chestnut and beech
were on them 30 years ago.   S. E. Gilbert, another
witness, 60 years of age, testified in appellant's be-
half that Wm. Thomas, the patentee, told him 38 or
40 years ago, that the beginning corner of the sur-
vey was a chestnut and two beeches near the upper
(King) ford of Bill's creek, on the right in going up
the hill; that he afterwards saw the chestnut and
beeches where William Thomas said they were, and
later Clay Thomas pointed them out to him as the
corner; that the trees were marked when he first saw
them, and the chestnut and remaining beech yet bear
the same marks; that Clay   Thomas   and   James
Thomas, his brother, also pointed out to him the
poplar tree south of the chestnut and beech as the
second corner contended for by appellant, and told
him it was the second corner of the patent.   G. A.
Eversole, whose map appears in the opinion, testified
that the marks on the chestnut and beech at figure

1 are old enough to correspond with the date of the patent, but that some of these marks had been disfigured by cutting into them with a sharp instrument. In running the line from the chestnut and beech by the calls of the patent, Eversole found that the first call gave out five poles short of the poplar stump claimed by appellant as the second corner, but also found that the fourth call did not give out until it reached the maple sprouts where, according to numerous witnesses, the fourth corner, a beech and maple, formerly stood.

The lines and corners of the Thomas patent as claimed by appellant were also established by the depositions of Ransom Blevins, Carr Eldridge, and Samuel Hensley; Blevins testifying that his father-in-law, Wright Wynn, an old man, more than 20 years ago, showed him the chestnut and beech, poplar, beech and hornbeam, and beech and maple, claimed by appellant as corners of the Thomas patent, and told him they constituted the first, second, third, and fourth corners, respectively, of the Thomas patent; that the trees designating these several corners were all then standing and bore marks as such, corresponding in age with the date of the patent. Carr Eldridge identified the chestnut and beech at figure 1 as the beginning corner of the Thomas patent, and in addition testified that his father, Hugh Eldridge, who owned land adjoining the Thomas tract, over 30 years ago got into a controversy with William Thomas, then owner of the land, as to the location of the lines dividing their lands, to settle which they got John Farmer, a surveyor, to run the lines of the Thomas 200-acre patent; that the surveyor began his work at the chestnut and two beeches at figure 1 as the beginning

corner of the Thomas patent, near the John King ford, and that this corner was pointed out by Wm. Thomas, Hugh Eldridge, Wright Wynn, and Hugh Johnson; and that the chestnut and two beeches were then marked. Samuel Hensley testified that he knew the chestnut and beech at figure 1 to be the beginning corner of the Thomas patent 19 years ago; that they were then marked as now, except that some of the marks have been recently disfigured; that he also then knew the poplar called for in the patent and running from the chestnut and beech, and it was then marked as a corner tree and the marks looked to be old ones; that he was employed by appellee with other hands to cut down the timber on the land in controversy, but refused to cut down the poplar because it was a corner tree; that it was later, and after appellee sued appellant, cut down by Cook and King, servants of appellee, and hauled away by others in his employ.

We have failed to find in the record any evidence contradictory of that of appellant's witnesses as to two important facts which add great weight to their testimony respecting the location of the Thomas patent, viz., the proximity of its beginning corner (i. e., the chestnut and two beeches) to the John King ford on Bill's creek, and of the fourth corner, the beech and maple, to Fall's Hollow. To locate the Thomas patent as appellant's evidence locates it will conform to the general description contained in the patent, which is that it is situated on Bill's and Turner's creeks; but, if located as contended by appellee, it would be equally, if not more, appropriate to describe it as lying on the waters of Yocum creek. We may also add that, though the land lies very near Bill's creek, the patent does not

locate it upon that stream. Its boundary does not call for a single object upon the banks of the creek, or to run with its meanders, nor does its location as fixed by appellant's proof make it touch the creek; but, if located as attempted by appellee, its boundary would not only run with the creek, but would more than once cross it. This is of itself enough to show that appellee's contention as to the location of the land embraced in the Thomas patent is incorrect. It is apparent that the judgment of the circuit court in determining the lines of the Thomas survey ignored the calls for natural objects, though they were well established by the evidence.

In our opinion the judgment is manifestly against the weight of the evidence, for which reason it is reversed, and cause remanded, with direction to the circuit court to enter a judgment dismissing appellee's petition and injunction, declaring appellant owner of the land and timber in controversy, and restraining appellee from further cutting or removing the timber.